**HOFFMAN et al. v. DAVIS et al.**

No. 2975.

Court of Civil Appeals of Texas. El Paso.

April 5, 1934.

Rehearing Denied May 3, 1934.

Whitaker & Peticolas, of El Paso, for appellants.

E. B. O'Quinn, of Marfa, for appellees W. A. and Orr Kerr and Cleveland.

Mead & Metcalfe, of Marfa, for appellees Davis and others.

WALTHALL, Justice.

Appellants, A. J. Hoffman, Ed Mueller, A. M. McCabe, S. T. Woods, M. D. Bounds, Lee Fisher, J. C. Fuller, and F. C. Mellard brought this suit against W. T. Davis, D. D. Kilpatrick, Jerry Grady, Jap Bishop, and W. A. Kerr, and certain corporations, and other persons, sureties of appellees' official bonds, to recover judgment on behalf of Presidio county, Tex., for the respective sums of $20,849.50, less a stipulated amount stated, and the sum of $38,811.43, less a stipulated amount stated, and that appellants have further relief, general and special, legal and equitable, to which they may be entitled.

The trial court sustained appellees' several pleas in abatement and their general demurrer and special exceptions to appellants' first amended original petition, and ordered appellants' suit abated and dismissed, from which rulings and judgment appellants in due time prosecute this appeal.

The pleadings of both parties are necessarily lengthy, and we will not copy them at length, but will, as briefly as possible, state them and copy their verbiage where deemed necessary, to sufficiently make clear the several points presented in appellants' assignments of error and appellees' counter propositions.

Appellants allege that they are "all resident citizens and legal property tax paying voters of Presidio County, Texas, acting for themselves and all other property tax paying voters of Presidio County, Texas, similarly situated, and also acting on behalf of the County of Presidio, Texas, herein styled plaintiffs," and further allege that "each of the plaintiffs hereinabove named are tax payers and owners of taxable real estate in Presidio County, Texas," and that "Presidio County is a body corporate and politic and an organized County of this state." Appellants allege that W. T. Davis was the county judge and his codefendants, W. A. Kerr, Jap Bishop, Jerry Gray, and D. D. Kilpatrick, were, respectively, the county commissioners of precincts Nos. 1, 2, 3, and 4 of said county, all duly elected and qualified as such, and all together they compose the commissioners' court of said county.

The petition proceeding alleges that W. T. Davis, on the date, stated, was duly elected and qualified county judge; that on the day stated he tendered to the commissioners' court of said county his official bond as county judge in the penal sum of $2,500, duly acknowledged and signed by defendant Union Indemnity Company, which bond was also duly authorized and acknowledged, stating the date and by whom the bond was duly approved; the verbiage of the official bonds of the several defendant officers is stated, with the names of their surety or sureties, each made defendant in the suit. The bonds are statutory and each in the form prescribed by the statute and duly approved as required by the statute. No question is raised as to the legal sufficiency of any of the official bonds, so we need not further state them.

The petition states appellants' cause of action substantially as follows:

"3. That on and prior to the dates and occasions hereinafter mentioned, there was a certain highway located in Presidio County, Texas, running between the town of Presidio and the town of Marfa, Texas, which was known and designated as 'State Highway No. 17', belonging to the State of Texas, and had been established and was being maintained and operated as a State Highway by the State Highway Department of the State of Texas.

"4. And pursuant to its duties under the law, the State Highway Department advertised, asked for or received bids for the construction of grading and small drainage structures on a certain portion of said Highway, known and referred to as Job No. 189 in Presidio County, Texas, commencing at that point known and referred to as Station 815-100 End. S. P. 970-A, and extending to that point known and designated as Station 1720-100 Begins S. P. 970-C. In accordance and in answer to said call so made by the State Highway Department of the State of Texas through its State Highway Engineer, The Trinity Farm Gravel Company, a corporation duly incorporated, through its agents and servants and President, did, prior to the 23rd day of November, 1931, submit a proposal by which it offered to do that certain work and furnish all materials called for in the contract and specifications according to the requirements of the engineer, it being understood that the quantities of work and materials furnished were approximate only, and same might be increased or diminished as deemed necessary by the engineer, as follows, to-wit: [Then follow in separate columns item No. 11, showing items with unit bid, approximate quantities, price written in words, unit bid price dollars cents, amount bid dollars cents, which we need not state in detail as no point is made as to any such items.] "

The total bid is stated to be $110,877.09. Then proceeding, the petition alleges:

"Notice: In order to alleviate the present conditions, the undersigned proposes to employ local labor, insofar as practicable, in the execution of the work covered by this proposal.

"5: That said offer so made was accepted by said State Highway Commission, by and through its duly authorized agent, and on or about the 23rd day of November, 1931, the said State of Texas, acting by and through its agent and servant, the State Highway Engineer of the State of Texas, as First Party, and the said The Trinity Farm Gravel Company, as second party, did enter into a contract bearing said date, by which said work was to be done by the said The Trinity Farm Gravel Company, at and for said prices.

"6: That thereafter, to-wit, on or about the 9th day of May the Commissioners' Court of Presidio County, Texas, being duly in session, at a meeting at which the defendant, W. T. Davis, as County Judge, and Jap Bishop, W. A. Kerr, Jerry Gray, and D. D. Kilpatrick, as Commissioners, were all present, it was unanimously voted and ordered by said Commissioners' Court and County Judge that the said County Judge of Presidio County, Texas, to-wit, the said W. T. Davis, and the said County Commissioners be and were authorized and directed on behalf of Presidio County, Texas, to enter into the following contract and agreement with said The Trinity Farm Gravel Company, substantially as follows, to-wit:

" 'This agreement and contract this day made and entered into by and between The Trinity Farm Gravel Com., a Corporation, duly incorporated under and by virtue of the laws of the State of Texas, acting herein by H. J. Gurley, its duly authorized, empowered and acting Vice-President, thereinafter referred to as The Company, and Presidio County, acting herein by and through W. T. Davis, its duly elected, qualified and acting County Judge, and the duly elected Commissioners of said County, under and by virtue of an order and resolution passed by the Commissioners' Court of Presidio County, Texas, at its regular session on May 9th, 1932, a copy of which is hereto attached, herein called The County';

"Witnesseth: Whereas, The Trinity Farm Gravel Co. has and holds a contract with the State of Texas, for the performance of certain road work on Highway No. 17, Marfa, Presidio County, Texas, being designated as State Project No. 970-B, and in which said contract the said Company has agreed to do certain dirt work in said construction road work; the original contract between said

Company and the State Highway Commission being here referred to for complete detailed description thereof and the plans and specifications for said road work being on file in the resident engineer's office of said Highway Department in Marfa, Presidio County, Texas; and, Whereas, The said Company has proposed to Presidio County and the Commissioners' Court thereof to contract and agree with the County to undertake the performance of certain portions of said road work, as is hereinafter fully set out, at a price of so much per cubic yard, under the terms and conditions thereof;

"It is therefore agreed, in consideration of the premises and the covenants, conditions, penalties and considerations hereinafter named, that the County does undertake to agree to do all remaining dirt work on said Project included in the said Company's contract with the State between the following groups of stations: (the petition states them). (Any changes other than these stations mentioned shall be made in writing and a part of this contract.) The County agrees that it will, between said stations, put the dirt in place on said road up to the stake requirements of the Highway Engineers and that same will be placed as smooth as can be done with fresnos, that the Company herein agrees to surface and level said dirt to meet the requirements of the State Highway Department."

The contract then states the consideration for such work based on the state highway estimates and the time the payments are to be made. We need not state that part of the contract. Then proceeding:

"The County agrees to finance its own operation and to accept payment on or about the 15th of each month when the Company herein is paid on its estimates from the State Highway Department.

"The County agrees to take out the required compensation and liability insurance at its own cost.

"All payments under this contract shall be based upon figures furnished by the State Highway Engineers upon work actually performed.

"The County agrees to place a foreman in charge of such work who shall direct and superintend the operation thereof.

"It is agreed that the work shall be completed within the time agreed upon by the State Highway Commission and the Trinity Farm Gravel Company. Venue of any suits growing out of this agreement shall be laid in Presidio County, Texas, and this contract

is made and is performable in Presidio County, Texas."

"7: That pursuant to said order, the said County Judge and County Commissioners, acting for and on behalf of Presidio County, Texas, and by virtue of their respective officers as County Judge and Commissioners, and while acting in their official capacities as aforesaid, did execute and sign same along with the said The Trinity Farm Gravel Company, by and through its Vice-President, H. J. Gurley, and pursuant to said contract so entered into and executed as aforesaid, and by virtue of their said respective officers and while acting in their respective official capacities, the defendants, County Judge and Commissioners of said County, did vote for and give their consent to the paying out of large sums of money, being County funds of said County, in carrying on the same; an itemized statement of which is hereto attached and made a part hereof, and plaintiffs say that the amounts so paid out pursuant to and under said contract under the orders and by the authority and with the knowledge, connivance and consent of the defendants in carrying out said contract made by them with said The Trinity Farm Gravel Company, aggregated the total sum of $20,848.51, all of which was illegal and knowingly without authority in law.

"8: Plaintiffs say that the contract so made by said defendants, on behalf of said County, with the Trinity Farm Gravel Company, was unauthorized and void, and all sums paid out by Presidio County, Texas, under and by the authority of said contract were so ordered to be paid out by the defendants, as Commissioners and County Judge of said County, and with their knowledge and authority and consent, and the payment of such amounts was unauthorized by law and in violation of the law, and constituted in law and in fact an unwarranted diversion of funds and moneys belonging to the County of Presidio, Texas, in this: (a) That neither the County of Presidio, Texas, nor the Commissioners or County Judge, acting for it, had any warrant for entering into a contract by which it, as sub-contractor, undertook to perform such contract for and on behalf of the Trinity Farm Gravel Company.

"(b) That said contract, in effect, did require and necessitate the payment to said, The Trinity Farm Company, as contractor, and receipt by it from Presidio County, Texas, of a large bonus on its contract with the State of Texas.

"(c) That the effect of said contract and the expenditure of said money by said defend-

ants in the performance of said contract was to lend the credit of said County to The Trinity Farm Gravel Company, and was a grant of public moneys in aid of said The Trinity Farm Gravel Company, all in violation of the laws of the State of Texas."

Plaintiffs' petition, then proceeding under paragraph 9, under which plaintiffs allege a second contract to the effect that prior to June 20, 1932, the Thurber Construction Company, a corporation, did submit a proposal with the state highway commission, by which it offered to do that certain work previously contracted to be done by the Trinity Farm Gravel Company and furnish all material called for in the contract and specifications according to the requirements of the engineer, for less money than the Trinity was to receive. The petition as in the previously stated contract, in separate columns, states the approximate quantities of work, items with unit bid price written in words, unit bid price dollars and cents, the amount bid dollars, cents, the total bid being $48,396.54. In paragraph 10 it is alleged as stated under the former contract the defendant officers, all being present in session, as commissioners, unanimously voted and ordered that defendant officers, on behalf of the county, entered into the following contract and agreement with said Thurber Construction Company. The contract is fully stated. Briefly stated, it provides that Presidio county, acting by defendant W. T. Davis, county judge, and the Thurber Construction Company: (1) Presidio county leases to the Thurber Company certain equipment named for work on S.P. 970-D, during the time necessary to complete the project; (2) states the compensation to be paid for each article; (3) states certain rights reserved to each party; (4) states certain accounting and payment to be made; (5) the Thurber Company to return said equipment; (6) states method of computing the costs and prorating same.

(11) The petition then alleges that defendant W. T. Davis, acting under the said authority and in his official capacity, executed said contract with the Thurber Construction Company, and that defendants' officers did vote for and give their consent to the paying out of sums of money, county funds of Presidio county, and makes an itemized statement of said sums of money paid out aggregating $38,818.43, all of which plaintiffs allege was illegal and knowingly made without authority of law.

(12) Plaintiffs allege the contract with the Thurber Construction Company was unauthorized and void, and that said sums of

money paid out thereunder were unauthorized by law and in violation of law, and constituted in law and in fact an unwarranted diversion of moneys belonging to Presidio county, for the reasons stated.

(13) Plaintiffs under said paragraph allege, in substance, that all of said contracts and all actions thereunder referred to, and all moneys expended thereunder, were knowingly illegal and void, were done by defendants against the advice of the Attorney General of Texas, and his assistants, and done fraudulently, pursuant to a conspiracy formed and carried out by defendant officials for the false and fraudulent purpose of serving their own ends; that the contract with the Thurber Company was made in the form of a lease for the purpose of evading the law and to benefit the Thurber Company. Plaintiffs allege that by reason thereof defendants became bound and promised to pay Presidio county the sums of money so expended under said contracts, viz.: $20,841.51, under the Trinity Farm Gravel Company contract, and $38,818.43, under the Thurber Construction Company contract, but that, though often requested, defendants have failed and refused, and still fail and refuse, to pay to plaintiffs' damage and the damage of said county, in the sums stated.

(14) Plaintiffs say that they have requested respectfully the county attorney of Presidio county, the county treasurer of said county, the commissioners' court of Presidio county, and the district attorney for the Eighty-Third judicial district in which Presidio county is located, to enter suit on behalf of Presidio county, Tex., and on behalf of the taxpayers thereof, against defendants for the recovery of said funds and moneys so illegally and unlawfully expended, but each have failed and refused, and still fail and refuse, to do so, and that defendants Davis, Gray, and Bishop now constitute the county judge and majority of said commissioners' court, and refuse to prosecute or order the prosecution of this suit in order to prevent said county from recovering said funds so expended.

(15) In this paragraph plaintiffs say that each of said projects 970–B and 970–D were joint ones undertaken by the state highway commission of Texas and Presidio county under agreements between them by which each was to bear one-half of the expense thereof, and pursuant to which said commissioners' court deposited in the Marfa banks named the county's one-half of the estimated expense, subject to the drafts of the said state highway department to be used in the settlement with the contractors as the work progressed, and that the contracts made with the Trinity Farm Gravel Company and the Thurber Construction Company were in furtherance of said projects, and that the subcontracts or agreements made by said county and the Trinity Farm & Gravel Company and the Thurber Construction Company were not in furtherance of the projects, but in reality were only subcontracts made by defendant commissioners for the benefit of said companies, and were a sham, a fraud, and a pretense in order to evade the law, and were never approved, recognized, or acted on by the state highway commission or its engineer.

(16) Plaintiffs allege that Presidio county, by reason of the performance of said work, received $4,000 for the work done under the Trinity Farm Gravel Company contract, and the sum of $6,848.19 under the Thurber Construction contract, and that the money expended in excess of said receipts is a total loss to said county.

Plaintiffs pray for judgment on behalf of Presidio county against defendants for the respective sums of $20,849.51, less the $4,000 collected, and $38,818.43, less the $6,848.19 collected, and all costs, etc.

Defendants Davis, Kilpatrick, Gray, and Bishop, and the United States Fidelity & Guaranty Company answer:

(1) Plaintiffs have and hold no pecuniary interests in the subject-matter of this suit, and are not interested therein other or different from the public in general, and have no vested right therein, and by reason thereof are not authorized to bring or prosecute this suit.

(2) That the commissioners' court of Presidio county is the proper authority to bring this suit, and this suit has been brought and is now being prosecuted for and on behalf of Presidio county without the consent and authority and against the will of the commissioners' court of Presidio county; the plaintiffs have no authority and are not authorized to prosecute the suit.

(3, 4, and 5) Defendants pleaded, respectively, as to the county treasurer, the county attorney, and the district attorney, and say as to each, if authorized to prosecute this suit, such an one has not authorized plaintiffs to file this suit, and the suit is now being prosecuted without the authority and consent of any one of them.

(6) Defendants pleaded a misjoinder of parties defendant, in that the commissioners' court, and the individual members of the

commissioners' court, in their official capacities as county commissioners, are proper and necessary parties defendant, and that none of them are named as defendant, and for that reason this suit should be abated until such parties are brought in.

(7) Defendants say the suit should be abated because prematurely brought: (a) Because the commissioners' court was, at the time this suit was filed, presenting and prosecuting a claim within the contemplation and terms of an act designated as House Bill No. 2, Third Called Session, Forty-Second Legislature; by virtue of said act Presidio county was seeking to have assumed by the board of county and district road indebtedness of the state a portion of the bonds designated as Presidio county special road bonds; that said board had assumed and taken over a portion of said road bonds, and that a portion of the expenditures as alleged by plaintiffs had been assumed to be paid by said board, and that the commissioners' court at the time had pending before said board a claim for an additional amount, which claims had not been determined and were still pending before said board, and could not be determined at the time the pleading was filed whether there would be any loss as alleged by plaintiffs, and, if any, to what extent, and that plaintiffs' suit could not be finally adjudicated until said matters had been passed upon by said Board.

(8) Stated in substance under other paragraphs that plaintiffs have no right or justifiable interest, legal or equitable, in the cause of action asserted in the capacity in which they sue.

(9) The plaintiffs' petition shows that the matters and issues involved have already been adjudicated, in that it is shown that the moneys sought to be recovered were paid out for the purpose of laying out, establishing, changing, etc., public roads and highways and in exercising general control over roads and highways in Presidio county, and in aid of the construction and maintenance of graveled and paved roads therein constituting a part of the state highway system, etc. The plea was duly verified.

Then follow general demurrer and special exceptions.

The above plea in abatement was adopted by defendants W. A. Kerr, Orr Kerr, and W. H. Cleveland.

The court, after hearing evidence on the plea, sustained defendants' plea in abatement in its entirety, and sustained defendants' general demurrer and several special exceptions, and abated and dismissed plaintiffs' suit, and plaintiffs duly prosecute this appeal.

## Opinion.

No evidence having been presented in the trial court on the hearing of the plea in abatement to contradict appellants' statement that appellants were taxpayers and owners of taxable real estate in Presidio county, and no disability personally to appellants having been suggested, we must assume that appellants are taxpayers, and, being taxpayers in Presidio county, would have such standing and could assert such rights as taxpayers in Presidio county could assert under the pleadings and under the circumstances involved in this suit.

Appellants submit that, since they had alleged that they had requested the county attorney, the county treasurer, the district attorney, and the commissioners' court, respectively, to bring this suit, and that each had failed and refused to do so, and that, since it appeared that the present county judge and members of the commissioners' court (excepting one member) were officers charged with the alleged fraudulent and illegal acts, as stated in the petition, and since the undisputed evidence showed such demand on the part of said officers and their failure and refusal to bring such suit, the suit was properly brought by appellants as such taxpayers on behalf of themselves and others similarly situated, and on behalf of the county, and therefore the suit should not have been abated.

Appellees make the contention that the suit should have been abated because appellants show no right in themselves to bring such suit. In this connection appellees refer to the evidence taken on the hearing on the plea as to action taken by the appellee W. T. Davis, as county judge, as representative of the commissioners' court, before the board of county and district road indebtedness in presenting claims for expenditures involved in this suit, but we think to discuss that feature later and under another proposition, and consider now the right of appellants solely as taxpayers to maintain the suit, without the direction or consent of any officer whose duty it might have been, primarily, to bring the suit or to have authorized it.

The record shows that appellants, on the dates stated, addressed a letter to each of the following officers: The county attorney, the district attorney, the county treasurer, and the commissioners' court, requesting that suit be filed on the matters involved in

this suit, and that no action was taken by any of them; that appellants, in their own right as taxpayers, and in their own names, brought this suit without the consent of any of such officers, and, so far as the record shows, without any request by appellants of any of said officers, or that appellants be permitted to bring the suit, and without the direction or consent of any of the said officers that appellants bring this suit, so that we have the circumstances here that this suit is brought by taxpayers and in their own names as taxpayers, for the use and benefit of Presidio county, wholly apart and independent of any officer of Presidio county.

Appellants refer us to the case of State et al. v. Stickle et al. (Tex. Civ. App.) 11 S.W. (2d) 837, by the Dallas court (writ dismissed).

The case was brought in the name of the state of Texas by the district attorney of Dallas county, and joined in the suit as a party plaintiff was a taxpayer of the Dallas county fresh water supply district, for the benefit of which district the suit was brought. The taxpayer, joined as a party plaintiff in the suit, was acting for himself and all other taxpayers of the district similarly situated. The suit was brought against the parties named as supervisors of the Dallas county fresh water supply district No. 7, a corporation, an administrative agency created by the Legislature for the purpose of supplying fresh water for the people of said district. Bonds of the district had been sold, and it was alleged in effect that the money derived therefrom was being improperly paid out by the supervisors so as to impose an unreasonable burden and fraud upon all taxpayers of the district. The prayer was for damages for the benefit of the district, or, in the alternative, to cancel the contracts for the purchase of the waterworks system and that the purchase price be returned to the district.

The trial court sustained defendants' general demurrer to plaintiffs' petition presented by way of an abatement to plaintiffs' suit.

The court, on appeal, discussed the question: "Was the suit properly brought by the District Attorney of Dallas County, and in the name of the proper plaintiffs?" After stating the provisions of the statute with reference to the organization of the district and the duties of the district attorney, the court concluded that the supervisors being intrusted with the collection and safe-keeping of the public funds of the district, the district attorney was authorized to institute the suit to preserve and protect the public interest.

On the other part of the question, "Was the suit brought in the name of the proper plaintiffs, namely, the State of Texas, by and through the District Attorney, of Dallas County, Texas, and L. S. Harper, a taxpayer of the District?" without stating the reasoning the court held that the taxpayer, Harper, was a proper, though not a necessary, party: "This, because of the inability of the supervisors to act for the district, conferred upon any one of the taxpaying citizens of said district the right, in the event the District Attorney should have refused to institute the proceedings, to have brought same in his name as plaintiff, and all other taxpayers similarly situated, for the use and benefit of said District." In discussing that feature of the question, the court eliminated the state as a proper party to the proceedings, and suggested that in amending the suit should proceed in the name of the water supply district; that the suit, not having been instituted in the name of the district, can furnish no ground for the abatement of the suit, "for the reason that the District was before the Court as a beneficial party represented by the District Attorney, an officer selected, authorized and required by the law to represent said District in the character of litigation reflected by the petition," and that "judgment rendered in the suit would be res adjudicata, as every right that could be litigated in a suit brought directly in the name of said District could be determined in the suit as brought."

The court reversed and remanded the case.

■ We have concluded that appellants, in their petition, sufficiently show a right in themselves as taxpayers, and as such are proper parties to bring this suit, and that it was error to abate the suit on the grounds that appellants, as taxpayers, hold no pecuniary interest in the subject-matter of the suit. The question was decided adversely to appellees' contention in the case of State v. Stickle, supra. That case also holds adversely to appellees' contention that the suit should abate because it was brought and is being prosecuted without the consent and against the will of the commissioners' court. That court is composed of the county judge and the county commissioners, who are necessarily parties defendant and are made so in the suit, and for that reason those officers are unable to act for the county in any capacity in the matter of bringing this suit or in giving, or refusing to give, consent to the bringing of the suit.

■ Appellees submitted, both by plea

644

and by exception, that, if the treasurer of Presidio county is authorized to prosecute this suit, he has not authorized appellants to bring the suit, and same is being prosecuted without that officer's consent, and for that reason the suit should abate. Appellees made the same contention as to the county attorney and the district attorney; that is, no one of said officers authorized to bring or to prosecute the suit or to give consent to its prosecution has done so, and for that reason appellants have no authority to bring or to maintain the suit.

Appellants defend against the above ground of abating the suit by alleging and offering evidence to show that, before filing suit, appellants demanded of the county and district attorneys, the county treasurer, and the county commissioners, that the suit be instituted for and on behalf of the county for the recovery of the moneys alleged to have been illegally expended, and that said demands were ignored by all of said officers except the district attorney, who practically refused to bring the suit, and that no action was taken by any one of said officers to bring the suit.

Without considering or discussing the merits of the cause of action, as alleged by appellants, we will assume, for the purpose of the question presented, that, other than appellants' demand on the said officers to bring such suit and their failure to bring the suit, appellants' petition states a cause of action in appellants as taxpayers; that prior to the filing of the suit by appellants, and as necessary to their right to file and maintain the suit, a demand should be made by appellants on some one of said county officers whose duty it was to bring such suit, and on a failure on their part to do so, as alleged by appellants, the question is then presented, Does the record show that appellants made such demand on any one of said officers whose duty it was to bring such suit and that each officer failed or refused to accede thereto?

The case was presented to the trial court and the evidence heard on the issue of fact on the plea in abatement, on the theory that, as a prerequisite to appellants' right to bring and maintain the suit, appellants must first have made demand of such officer, and that such officer failed or refused to bring such suit. Without discussing the necessity of such demand, as such is conceded by both parties, and failure or refusal, we will consider only the sufficiency of the evidence in the record to show such demand and failure or refusal.

The record shows that on February 22d, 1933, appellants through their attorneys addressed a letter to K. C. Miller, county attorney of Presidio county, and to Mr. Ray R. Priest, district attorney, in which they requested that suit such as is presented here be filed against appellees. The letter sufficiently indicates, we think, the character and subject-matter of the suit which appellants requested be filed, and requested that appellants be advised at once whether the officers addressed would "prepare and institute these suits."

The record does not show whether the county attorney received the letter. No response was received.

The district attorney replied to the letter on March 4, 1933. His letter is addressed to appellants, naming them, and one of appellants' attorneys. The letter is lengthy, and we will briefly state its contents. It acknowledged the receipt of appellants' letter; stated that the writer had returned to his home at Rankin the night before from official duties in other counties; it referred to appellants' letter as being primarily addressed to the county attorney; said he had not heard from the county attorney, and assumed that he had answered; that the county attorney was more familiar with the situation, and that he hesitated to take any action until he had learned what the county attorney will want to do, and would extend that courtesy; assumed that appellant's attorney had gone into the matter thoroughly, and asked that he be furnished with all information and data appellants' attorney had, liked to first make careful investigation of the law and facts to determine the probable results of the suit "before I file it"; made some reference to some suggestions in appellants' letter, and suggested as to that there was a serious question, and suggested what occurred to him under the circumstances; thought it necessary to have permission from the commissioners' court to bring the suit, and expressed some doubt whether such suit as appellants' attorney had suggested could properly be brought, and would appreciate suggestions from appellants' attorney on the point and authorities, and would not consider filing such suit "until this point is settled"; that, so far as he knew, no final settlement with the county under the two contracts had been made, and at that time the loss, if any, was not known, and asked to be advised as to any exact figures on the loss; would like to be satisfied as to any loss "before I take any action such as you suggest

and request"; was "not in a position at this time to file the suit as requested by you"; was "willing to look into the situation further, and in the event that I conclude that a suit will properly lie and is justified upon the law and facts, then I will file the suit against the proper parties"; said he was glad to hear from the attorney and would thank him for any suggestions he would care to make to him; would "like for all of you to know that I take pride in doing my duty and I am certain that you will find that this instance will prove no exception."

Neither appellants, nor appellants' attorneys, made reply to the district attorney's letter, and, so far as the record shows, had no further correspondence with either the county or district attorney about the suit. So far as the record shows, neither appellants nor their attorneys made any suggestions or request of any officer of Presidio county for permission to file the suit.

As stated, both parties submitted the matters that were submitted, on the theory that some of the county officers must file the suit, or fail or refuse to do so, before appellants could properly do so, and, without deciding whether such would be necessary, we will consider the issue here upon the same theory.

We think the district attorney would have been the proper officer to bring the suit, in the event such suit should have been brought, which we do not decide, since we know nothing of the merits of the controversy, and are considering only the sufficiency of the petition as stating a cause of action as against general demurrer and the exceptions and the plea in abatement in the light of the evidence heard on the plea.

Appellants filed the suit on March 16, 1933, just twelve days after the date of the above letter from the district attorney to appellants and their attorneys. A perusal of the district attorney's letter to appellants clearly shows that he neither failed nor refused to bring the suit requested by appellants and their attorneys, but, on the contrary, he expresses himself as willing to do so should such a suit be thought proper and advisable after investigation, and requested appellants and their attorneys to furnish him with such information as to the law and the facts as they had, which was not furnished. The district attorney probably had the idea that, should he bring or sanction such suit, the attorneys writing for and representing appellants would appear in the suit, and had such information as to the law and facts as would be necessary for him to have to determine as to the advisability of such suit, and to prepare such suit should it be filed.

Appellants' letters to other officers were addressed to them at a later date than the one to the county and district attorney, and to which no reply was received. We need not consider them as failing or refusing to bring the suit.

Appellants show other grounds for abating the suit, such as appellants' efforts before the board of county and district indebtedness, to have the indebtedness sued upon assumed in part or in full. We have thought such would come more properly before the trial court on a trial of the case on the merits, and in preparing the case for trial. We think the facts stated are strictly defensive on a trial of the merits, and such facts might appeal loudly to the trial court in announcing for trial.

We think none of the exceptions to the petition are well taken, nor do we think the suit should abate on any grounds other than as indicated.

The view we take of the case is that the suit was prematurely instituted, and for that reason the plea in abatement was properly sustained. 1 Tex. Juris. p. 131, par. 95; Hart v. Texas Employers' Ins. Ass'n (Tex. Civ. App.) 42 S.W.(2d) 798; Wischkaemper et al. v. Clement & Walker (Tex. Civ. App.) 58 S. W.(2d) 566.

For that reason, the case is affirmed.